1

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                 FOR THE EASTERN DISTRICT OF CALIFORNIA

7

8   CHAD RHOADES and LUIS URBINA,      )
                                       )
9                Plaintiffs,           )   2:10-cv-1788-GEB-KJM
                                       )
10          v.                         )   ORDER GRANTING REMAND MOTION
                                       )
11  PROGRESSIVE CASUALTY INSURANCE CO.,)
    INC.,                              )
12                                     )
                 Defendant.            )
13  _____)

14          Plaintiffs move to remand this case to the Sacramento County

15  Superior Court in California from which Defendant removed it, arguing

16  that the federal court lacks subject-matter jurisdiction under the Class

17  Action Fairness Act of 2005 ("CAFA"). CAFA "vests district courts with

18  'original jurisdiction of any civil action in which, inter alia, the

19  amount in controversy exceeds the sum or value of $5,000,000, exclusive

20  of interest and costs,' and in which the aggregate number of proposed

21  plaintiffs is 100 or greater, and any member of the plaintiff class is

22  a citizen of a state different from any defendant." Lowdermilk v. U.S.

23  Bank Nat'l Ass'n, 479 F.3d 994, 997 (9th Cir. 2007) (quoting 28 U.S.C.

24  § 1332(d)(2)). Plaintiffs argue Defendant has failed to satisfy its

25  burden of showing that the amount in controversy exceeds the sum of

26  $5,000,000. Defendant opposes the motion.

27  ///

28  ///

                                      1

# I. BACKGROUND

Defendant removed this case to this federal court in an earlier filed action designated as Case No. 2:10-cv-00763-GEB-KJM; following which Plaintiffs filed a First Amended Complaint ("FAC"), and then a remand motion. That remand motion was granted in an order filed on June 10, 2010. (Case No. 2:10-cv-00763-GEB-KJM, Order, June 10, 2010, ECF No. 23.) The June 10, 2010 remand order did not consider Plaintiffs' FAC since the appropriateness of removal "must 'be determined according to [Plaintiffs'] pleading at the time of the petition for removal.'" Thiel v. Southern Pac. Co., 126 F.2d 710, 712 (9th Cir. 1942) (quoting Pullman Co. v. Jenkins, 305 U.S. 534, 537 (1939)).  After the action designated as Case No. 2:10-cv-00763-GEB-KJM was remanded, Defendant removed the case again based on allegations in Plaintiffs' FAC. (Notice of Removal ("Removal"), ECF No. 1.)

Plaintiffs allege in their FAC that they and the members of the putative class were "employed in the State of California by the Defendant[] to adjust insurance claims and their positions were known as 'Claims Adjuster,' 'Claims Generalist Associate,' or similar titles" during the past four years. (FAC ¶¶ 2, 6.)  Plaintiffs and members of the putative class were allegedly "not paid overtime wages for all hours worked" and were not "provided accurate itemized wage statements." Id. ¶ 1.

Plaintiffs allege five claims: (1) failure to pay overtime wages in violation of California Labor Code sections 1194 and 1198, and IWC Order 4-2001; (2) failure to timely pay wages due at termination ("waiting time penalties") in violation of California Labor Code sections 201-203; (3) illegal record keeping in violation of California Labor Code section 226; (4) unfair business practices in violation of

California Business and Professions Code sections 17200, *et seq.*; and (5) statutory penalties in violation of California Labor Code section 558. Id. ¶¶ 22-55.

Plaintiffs also allege that "the individual members of the classes herein have sustained damages under the seventy-five thousand . . . jurisdictional threshold and that the aggregate claim is under the five million dollar . . . threshold, [and argue therefore] removal under the CAFA would be improper." Id. ¶ 5. Plaintiffs state in their prayer for relief: "Plaintiffs are informed and believe that the damages, back-wages, restitution, penalties, interest and attorneys's [sic] fees do not exceed an aggregate of $4,999,999.99 and that Plaintiffs' individual claims do not exceed $74,999.99." Id. 13:19-22.

## II. LEGAL STANDARD

"We strictly construe the removal statute against removal jurisdiction. Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citation omitted). Defendant "bears the burden of establishing . . . jurisdiction" under CAFA. Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 686 (9th Cir. 2006).

The Ninth Circuit holding in Lowdermilk, discussed as follows in Guglielmino v. McKee Foods Corp.,506 F.3d 696 (9th Cir. 2007), states the standard governing the remand motion sub judice:

> [I]n the CAFA context[,] . . . when a state-court complaint affirmatively alleges that the amount in controversy is less than the jurisdictional threshold, the "party seeking removal must prove with legal certainty that CAFA's jurisdictional amount is met." Two animating principles informed our judgment in Lowdermilk. The first is that federal courts are courts of limited jurisdiction which we will strictly construe. The second principle is that the plaintiff is "master of her complaint" and can plead to avoid federal jurisdiction. Thus, in Lowdermilk, by adopting "legal certainty" as the standard of proof, "we guard[ed] the presumption against

federal jurisdiction and preserve[d] the plaintiff's prerogative, subject to the good faith requirement, to forgo a potentially larger recovery to remain in state court."

Guglielmino, 506 F.3d at 699-700 (quoting Lowdermilk, 479 F.3d at 998-1000) (internal citations omitted).

Since Plaintiffs have "pled an amount in controversy less than the $5,000,000, [Defendant] . . . must prove with legal certainty that CAFA's jurisdictional amount is met." Lowdermilk, 479 F.3d at 1000. "The 'legal certainty' standard sets a high bar for the party seeking removal, but it is not insurmountable." Id.

### III. DISCUSSION

**A. Propriety of the Notice of Removal**

Plaintiffs argue Defendant is barred from filing a second Notice of Removal because it is untimely, violates the law of the case, and constitutes an impermissible motion for reconsideration. (Mot. 1:25-27; Reply in Support of Motion for Remand ("Reply") 1:2-15.) Defendant disagrees.

**1. Timeliness of Notice of Removal**

Plaintiffs argue removal was untimely because it violates the 30-day rule. (Mot. 6:12-25.) 28 U.S.C. § 1446(b) required Defendant to file its notice of removal within thirty days after receipt "of a copy if an amended pleading, motion, order or paper from which it may first be ascertained that the case is one which is or has become removable[.]" The order remanding the earlier filed case to state court was filed on June 10, 2010, and Defendant's second Notice of Removal was filed on July 9, 2010. This Notice of Removal was filed timely since it was filed within thirty days of the date on which the earlier remand order was filed, and was based on the FAC which was not considered in the remand order.

## 2. Law of the Case and Motion for Reconsideration

Plaintiffs arguments that Defendant's Notice of Removal violates the law of the case and constitutes an impermissible motion for reconsideration are also unpersuasive. "[A] defendant who fails in an attempt to remove on the initial pleading can file a removal petition when subsequent pleadings or events reveal a *new* and *different* ground for removal." <u>Kirkbride v Continental Casualty Co.</u>, 933 F.2d 729, 732 (9th Cir. 1991) (emphasis in original). The FAC contains allegations on which Defendant relied as part of the basis for its removal petition. Since Defendant was not permitted to rely on the FAC when it filed its earlier removal petition, and the remand ruling filed in the earlier action held that the FAC could not be considered when determining whether the earlier filed case was removable, Defendant's remand motion does not violate the law of the case or constitute an impermissible motion for reconsideration.

## B. Amount in Controversy

Plaintiffs also argue that Defendant's Notice of Removal is not supported by evidence, and that Defendant "cannot meet its burden to show . . . the minimum amount in controversy for CAFA diversity[.]" (Mot. 6:26, 11:22-23.) Plaintiffs argue Defendant has not adequately supported its class size assertions, and Defendant's damages calculations are not supported by evidence. <u>Id.</u> 7:8-22, 12:1-2. Defendant counters it has shown to a legal certainty that the amount in controversy greatly exceeds the $5,000,000 CAFA jurisdictional minimum. (Opp'n 2:1-10.) Defendant supports its amount in controversy argument with evidence on class size and the following categories of damages: unpaid overtime, waiting time penalties, inaccurate wage statements,

statutory penalties, and attorneys' fees. Id. 9:10-11:9. Plaintiffs specifically address Defendant's class size estimate and unpaid overtime calculation, and counter the remainder of Defendant's damages calculations with a general argument.

### 1. Class Size

Plaintiffs argue "a more definitive statement of potential class members is absolutely required." (Mot. 12:1-2.) Defendant responds it "has precisely estimated the class size." (Opp'n 8:11.)

Plaintiffs allege in the FAC that "Plaintiffs were, or are, employed in the State of California by the Defendant[] to adjust insurance claims and their positions were known as, 'Claims Adjuster,' 'Claims Generalist Associate,' or similar titles, during the relevant time period." (FAC ¶ 6.) Plaintiffs define the proposed class as "[a]ll Defendants' [sic] California based Claims Adjusters, and other similar positions, employed four (4) years before the filing of the Complaint until the date of trial[.]" Id. 4:5-6. Plaintiffs define two subclasses: (1) an "Overtime Subclass" made up of class members "who did not receive overtime wages for all hours worked in excess of eight (8) hours per day and/or forty hours (40) hours per week"; and (2) a "Terminated Subclass" made up of class members "who resigned or whose employment was terminated and who were not paid all wages due upon termination." Id. ¶ 12.

Defendant relies on a declaration from its human resources consultant James Kiedaisch to establish the number of individuals involved with Plaintiffs' class claims. (Removal Ex. D ¶ 1.) Kiedaisch declares that he reviewed Defendant's business records to determine the number of "Claims Adjuster, Claims Representatives, Claims Generalist

Associate and/or equivalent positions and/or other similarly designated titles, within the State of California ["Claims Representatives"]." Id. ¶¶ 3, 5. Kiedaisch declares that from February 2006 to May 2010 Defendant "employed an average of 544.53 full-time Claims Representatives in California." Id. ¶ 5. Kiedaisch also declares during that time, "there were 395 Claims Representatives in the state of California whose employment was terminated." Id.

Defendant's evidence is sufficient to support its estimate of the number of persons in the proposed class. However, Defendant has over estimated the terminated class by not limiting its estimate to those "who were not paid all wages due upon termination," which is alleged in the FAC. (FAC ¶ 12.)

In addition, Defendant has not presented evidence on the number of class members in the overtime subclass, but instead assumes that the 544.53 individuals in the proposed class also comprise the overtime subclass. However, Defendant offers no evidence that all members of the proposed class "did not receive overtime wages for all hours worked in excess of eight (8) hours per day and/or forty hours (40) hours per week[.]" (FAC ¶ 12.)

Plaintiffs allege in the FAC that "overtime would be expended on a periodic basis without approval and without appropriate overtime compensation[,]" and that on occasion they "could anticipate overtime and could request it in advance." Id. ¶ 23. Plaintiffs state in their prayer for relief that their damages calculation is "[b]ased on investigation and the fact that employees in the proposed class were paid overtime to some degree (but not for all overtime work)[.]" Id. 13:18-19. Defendant ignores the allegations in the FAC which limit the

number of individuals who potentially comprise the overtime subclass. Defendant could have better tailored its estimate of the size of the overtime class by addressing Plaintiffs' specific allegations with regard to the overtime subclass. Therefore, it is unclear how many individuals are included in the overtime subclass and what amount in controversy is involved with the claims of this subclass.

### 2. Unpaid Overtime

Defendant argues the estimated amount in controversy concerning Plaintiffs' first claim, in which Plaintiffs seek unpaid overtime under California Labor Code sections 1194 and 1198 and IWC Order 4-201, "is $7,940,815.60 to $19,852,039." (Opp'n 9:14-15.) Plaintiffs argue these "calculations are based on a series of attorney made assumptions, arguments and assertions, unsupported by any statement or declaration." (Mot. 7:12-14.)  Plaintiffs dispute the time period Defendant uses to calculate unpaid overtime and the number of persons Defendant asserts are involved with this claim. Id. 7:16-22, 12:8-9.

Plaintiffs allege in the FAC that they "reasonably estimate that the unpaid overtime included anywhere from 2 to 5 hours expended in a typical workweek for which they would work without overtime compensation[.]" (FAC ¶ 23.) Plaintiffs also allege that the named plaintiffs' claims are typical of the class claims. Id. ¶ 18. Defendant calculates the overtime claims using the two to five hours estimate Plaintiffs' allege in the FAC as follows: "2 or 5 [hours of unpaid overtime per week]) x ($23.37 [avg hourly wage]) x (1.5 [overtime premium]) x (52 [weeks per year]) x (4 [years class period]) x (544.53 [average number of Claims Representative[s] employed at any one time])." (Opp'n 9:27-28.) The average hourly wage Defendant uses is supported by

Kiedaisch's declaration that "[t]he average hourly rate for Claims Representatives in California between February 2006 and May 2010 was $23.37." (Removal Ex. D ¶ 5.)

Plaintiffs argue "the overtime policy in question has not existed for the entire proposed class period" but "only Defendant has the knowledge and information necessary to determine the time . . . [the] overtime policy was in place[.]" (Reply 5:13-20.) However, Plaintiffs allege in the FAC that they were subjected to the unlawful overtime policies during the past four years. (FAC ¶ 2.)  Therefore, Defendant has properly used the four year period that Plaintiffs plead.

However, Defendant's provides insufficient evidence in support of its supposition that 544.53 class members comprise the overtime subclass, and that each member of this subclass worked fifty-two weeks a year. "[A]bsent more concrete evidence, it is nearly impossible to estimate with any certainty the actual amount in controversy." Lowdermilk, 479 F.3d at 1001.

### 3. Waiting Time Penalties

Defendant estimates Plaintiffs' waiting time penalties under California Labor Code section 203 are "approximately $2,215,476.00." (Opp'n 9:18-10:4.) California Labor Code sections 201 and 202 require employers to pay their employees all wages due within seventy two hours of termination. If an employer willfully fails to timely pay such wages, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203(a).

Defendant calculates the amount in controversy for this claim as follows: "(395 [putative class members in the terminated subclass]) x ($186.96 [earnings per day ($23.37 x 8)]) x (30 [maximum penalty period])." (Opp'n 10:23-24.)  However, Defendant improperly assumes the number of individuals qualifying as members in this subclass. Defendant assumes that every Claims Representative who was terminated during the class period was not paid within seventy two hours of termination, and that each member is entitled to seek recovery of the penalty for the full thirty day period.  But there is no evidence indicating how late, on average, the payments were. "Many employees may have been paid only a few days late and, consequently, would be entitled to fewer days of penalty wages." Lowdermilk, 479 F.3d at 1001. "Again, absent more concrete evidence, it is nearly impossible to estimate with any certainty the actual amount in controversy." Id.

**4. Inaccurate Wage Statements**

Defendant argues that the amount in controversy concerning Plaintiffs' claim for inaccurate wage statements, alleged under California Labor Code section 226, is "$1,388,551.50." (Opp'n 10-6-11.) California Labor Code section 226(e) prescribes:

> An employee suffering injury as a result [of an employer's failure to comply with a wage statement requirement]. . . is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Defendant calculates inaccurate wage statement claims as follows: "((544.53 [average number of full time employees]) x ($50 [$50 for first pay period violation])) + ((544.53 [average number of full

time employees]) x ($100 [$100 per violation for remaining pay periods])

x (25 [number of remaining pay periods]))." (Opp'n 10:25-26.) However,

Defendant has not provided evidence supporting its assertion that each

person in the putative class worked the requisite number of pay periods

to be eligible for the maximum penalty. Since it is unclear how many

class members would be entitled to the referenced damages, Defendant's

damages assumptions are unsubstantiated. See Lowdermilk, 479 F.3d at

1001 (stating Defendant's assumption that all class members would be

entitled to damages unsupported by evidence).

### 5. Statutory Penalties

Defendant also argues that the amount in controversy involved

with Plaintiffs' fifth claim is "$707,889.00." (Opp'n 10:13-17.)

Plaintiffs' fifth claim is alleged under California Labor Code section

558, which states:

> an employer who violates . . . a section of this chapter
> . . . shall be subject to a civil penalty as follows; (1)
> for any initial violation, fifty dollars ($50) for each
> underpaid employee for each pay period for which the
> employee was underpaid in addition to an amount
> sufficient to recover underpaid wages. (2) For each
> subsequent violation, one hundred dollars ($100) for each
> underpaid employee for each pay period for which the
> employee was underpaid in addition to an amount
> sufficient to recover underpaid wages.

Defendant calculates the amount in controversy involved with

this claim as follows: "(544.53 [average number of full time employees])

x ($50 [$50 per violation per pay period]) x (26 [number of pay periods

at issue])." (Opp'n 10:26-27.) However, Defendant again improperly

assumes, without evidentiary support, that each putative class member

worked unpaid overtime every pay period.

///

### 6. Attorneys' Fees

Finally, Defendant argues Plaintiffs' "[r]equest[] for attorneys' fees must be taken into account in ascertaining the amount in controversy." (Opp'n 10:20-21.) An award of attorneys' fees is recoverable if authorized by the underlying state statute, and such fees may be included as part of the damages calculation when determining whether CAFA's jurisdictional minimum is met. <u>Lowdermilk</u>, 479 F.3d at 1000. Defendant argues "[a]ttorneys' fees, 'could be as much as thirty percent of the judgment' in class action matters." <u>Id.</u> 11:3-4 (quoting <u>Frederico v. Home Depot</u>, 507 F.3d 188, 199 (3d Cir. 2007)). However, since Defendant has not provided sufficient evidence upon which damages can be estimated, it is unclear how to estimate the recoverable attorneys' fees.

### IV. CONCLUSION

For the stated reasons, Defendant has left the Court to speculate as to the value of Plaintiffs' claims for relief, and "whether or not members of [a] class qualify for penalty [and other damages]." <u>Lowdermilk</u>, 479 F.3d at 1002. However, "such speculation does [not] meet the 'legal certainty' standard." <u>Id.</u> Accordingly, Plaintiffs' remand motion is GRANTED. Therefore, this case is remanded to the Sacramento County Superior Court in California. This action shall be CLOSED.

Dated:  October 7, 2010

_____
GARLAND E. BURRELL, JR.
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28